IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LETONIA WESTON, on behalf of C.S., a minor child, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 07-0229-CV-W-HFS<br>) |
| KANSAS CITY, MISSOURI SCHOOL DISTRICT, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

When Congress enacted a body of law, the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., seeking to protect the educational rights of children suffering from disabilities, I am satisfied it did not intend or anticipate creating a "federal case" out of a significant number of disputes concerning school district handling of such problems. Instead, I suppose the purpose was essentially to offer a forum which would give some assurance that arbitrary administrative rulings <u>could</u> be appealed, and therefore deterred. This case is an unfortunate model of miscarried good intentions. We have a dispute over the kindergarten, first and second grades for a youth now 14 years of age. A genuinely dispositive motion under a complaint filed administratively in September 2006, was first filed last year by the Kansas City, Missouri School District (the defendant), although there was an earlier (but belated) filing of a motion by the mother of the child (the plaintiff) that could not resolve the issues. If successful, it would have resulted in a remand to a State administrative panel because of a procedural error – denying the claim at the conclusion of the parent's proof.

I share some deserved criticism for the slow pace of this case, but it would have been hopelessly out of date under the best of circumstances. While I sense that the whole case has probably become moot, defendant asks for a ruling on the merits upholding the decision of the State administrative panel. At least one issue (regarding the boy's reading training in his initial schooling) conceivably could, with some stretching of practicality, still be the subject of a remedial order.

I have apparently wasted a good deal of time urging the parties to work out their differences in a reasonable manner, but I am renewing this appeal now that they are receiving some dispositive rulings, but from a judge who confesses no expertise in early education issues.

**I.**

A review of the hearing transcript, the elaborate briefing and the attached exhibits, indicates that the boy's identified troubles, in kindergarten and the early grades, were initially his speech difficulty (articulation), and then considerable behavioral problems in school and on the school bus, which ultimately had developed into an academic problem – severely delayed reading achievement by the time he completed second grade. Complaints have also been pursued regarding the alleged inadequacy in parental involvement. Counsel for plaintiff also has been seriously disputing the adequacy of disclosure of educational records. In light of the evidence offered by plaintiff, I conclude that the December 2006 decision of the State administrative panel, in favor of the School District at the close of plaintiff's evidence, is sound, with or without the due deference that should be exercised in favor of the panel. (ECF doc. 4-3). For reasons outlined by the School District (ECF doc. 37, pp. 2-3), the panel justifiably considered plaintiff's case to have been closed. All issues seem to me to be moot with the possible exception of the boy's progress in reading, which plaintiff asserts is <u>still</u> much below grade level. (ECF doc. 47).

**A.**

The speech difficulty has been worked on and the second grade teacher considered it to have been overcome. This issue seems no longer to be pressed by plaintiff.

**B.**

While there were some occasions where parental involvement may have been missed, these seem generally to have been times when plaintiff was unavailable. The mother was very actively and commendably concerned with the problems and progress of her child. The panel was justified in failing to criticize the School District on this issue.

**C.**

There has been a running debate on the supplying of "education records."[1] The School District is correct that the United States Supreme Court has suggested a very narrow reading of the term, limiting it to permanent records deposited with a single central custodian. Owasso Ind. School Dist. v. Falvo, 534 U.S. 426, 435-36 (2002). See also Bd. Ed. Toledo City School Dist. v. Horen, 2010 WL 3522373 (N.D. Ohio Sept. 8, 2010); S.A. v. Tulare County Office of Ed., 2009 WL 3126322 (E.D. Cal. Sept. 24, 2009). The School District has in practice supplied a great deal of material that was not strictly necessary, under federal law. This is also commendable, in the absence of formal discovery requirements in the administrative proceeding.[2] Some record-keeping, in a general sense, may have been considerably less than ideal, but was not a violation of federal law,

---

[1] The definition for "education records" is set out in the Family Educational Rights and Privacy Act of 1974 (FERPA). See 20 U.S.C. § 1232g(a)(4)(A).

[2] Subpoena authority for due process hearings may presumably reach beyond the federal duty to supply parents with a limited group of records.

3

as outlined by the Supreme Court in <u>Falvo</u>. In any event, any deficiencies in preserving "ancient history" have no current practical effect.

**D.**

The behavioral issues are a much more serious problem. There were constant problems during the years in question (September 2004 – September 2006). The evidence of common-sense coping by school personnel with the problems recited by the three teachers who testified seems to be as much as a critic would normally expect. The mother's frequent defensive attitude, seeking to minimize wrongdoing by the child, was also perhaps normal but not helpful. Plaintiff contends that a formal behavioral correction program should have been earlier instituted. From the record at the hearing, the panel did not fault the School District for not writing up a behavioral plan earlier, and I also conclude that any deficiency is not so serious as to have had material practical effect and did not deprive the child of his right to a "free appropriate public education" under the IDEA. <u>See</u> 20 U.S.C. § 1401(9) (defining the term, often abbreviated as FAPE).

The panel rejected the testimony of the plaintiff's expert (psychologist Dr. Avner Stern, Ph.D) on procedural grounds, which was a justifiable exercise in discretion. Because the panel had decided to take plaintiff's proof first, and then to schedule the School District's cross-examination and affirmative proof at a later date, this eliminated unfair surprise as an issue, and I disagree with the procedural rejection but acknowledge that my practice would not be so plainly superior that I can find an abuse of discretion by the panel. Considering the substance of the expert testimony, the main contentions seem to have been that (1) identification of the problem should have come earlier than it did occur and (2) the behavioral plan was too generally worded and should have been more specific in recommendations for dealing with the child, who was disruptive and uncooperative. The

4

evidence shows there was prompt action, not words. I do not find much specificity in Dr. Stern's recommendations and consider this a form of second-guessing which, although possibly sound, was never presented to the individuals charged with preparing a plan. It was thus irrelevant, except for use in framing a remedy, if plaintiff were to prevail. I do not believe the general criticism was particularly likely to have achieved a success if used, or to have made a material difference. The suggestion of dyslexia, the most significant observation by the expert witness (1) was not shown to have been within his expertise, (2) has apparently not been tested out in the years since December 2006, (3) was never timely presented to those charged with designing remedies for the child, and (4) has not been shown to have been something that the mother or the school personnel should probably have considered as a source of difficulty in reading.

The behavioral issue was mooted during the intervening years by removing the child from public school and placing him, at District expense, in Ozanam School, in a program designed to deal with children suffering with behavioral problems.[3] While it could be argued that earlier removal of the boy from public school and placing him in a special school might have avoided his academic problems, the mother did not seek such relief, and the outcome is speculative, particularly since plaintiff contends that even after years of behavioral help, the youth is still significantly behind in his academic achievement despite having the personal ability to do much better.

**E.**

The reading problem was not on the way to a solution, according to the weight of the evidence, contrary to the somewhat inconsistent testimony of Ms. Collins, the second grade teacher.

---

[3]Plaintiff's efforts to gain a better education for her child may thus have served as a catalyst for the transfer, but under current law, I doubt it could result in an award of fees.

(I do note that her testimony reads as the least persuasive of all the witnesses). The boy's reading problems may have been traceable at least in part to dyslexia, which still has not been formally diagnosed, a bad start in the French language school (a school convenient to and chosen by plaintiff), considerable psychological resistance to reading (a possibility but not shown to be "curable" even by Dr. Stern), and late identification (perhaps related to the French program). In any event, there were remedial reading efforts, the sufficiency of which has not been meaningfully challenged, even by the dissenting member of the administrative panel, who I understand was the parental designee. ECF doc. 2-2.[4] I cannot conclude that lack of success during the period in question compels the conclusion that the boy was denied a "free appropriate public education" that is chargeable to the actions or inactions of the School District.

## II.

For present purposes, I assume plaintiff can still base her complaint on September 2006 assertions without renewing complaints year after year (attributed by counsel to frustration). Nevertheless I agree with the panel that any deficiencies in handling the boy's early education in reading were not so grave as to deprive him of a "free appropriate public education" under the IDEA.[5] The issues presented by plaintiff do not, separately or considered together, support a conclusion that there was a violation of federal law in the School District's handling of this boy's

---

[4]The dissenting opinion emphasizes selective procedural criticism. The principal substantive issues were the harmful effect of the experience in the French immersion schooling and the need for behavioral support. The first was the mother's choice (probably ill-advised and perhaps tolerated for too long), and the second apparently resulted in the post-hearing transfer to Ozanam, which is not a current complaint.

[5]The currently asserted difficulty in mathematics is outside the scope of this case.

educational problems. Success is not guaranteed, and lack of success does not in itself justify a favorable result in litigation.

Accordingly, it is hereby

ORDERED that the School District's motion for judgment on the administrative record (ECF doc. 31) is GRANTED. As a result, the ruling by the State administrative panel is therefore AFFIRMED and the complaint was properly rejected. The Clerk of the Court shall enter judgment in favor of defendant Kansas City, Missouri School District on the administrative record. SO ORDERED.

/s/Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

November 10, 2011

Kansas City, Missouri

7

Case 4:07-cv-00229-HFS   Document 53   Filed 11/10/11   Page 7 of 7